**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 22-CR-XX** |
| | : | |
| **DELONTE JACKSON,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant be detained pending trial pursuant to 18 U.S.C. § 3142 (f)(1)(E) (felony involving possession of a firearm) and 18 U.S.C. § 3142 (d)(1)(A)(iii) (probation/parole for any offense) of the federal bail statute. The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

**Introduction**

Delonte Jackson is a twenty-three year old male who has a troubling pattern of unlawfully possessing firearms, dangerous criminal conduct, and violating conditions of release. On balance, all of the relevant factors in this case weigh heavily in favor of pretrial detention.

On February 26, 2021, Defendant pleaded guilty in D.C. Superior Court to Assault with a Dangerous Weapon (ADW) (Case No. 2020 CF3 4667), as well as to Carrying a Pistol Without a License (CPWL) in an unrelated matter (Case No. 2020 CF2 6600).   *See* Ex. B (Judgment and Commitment Order, 2020 CF3 4667); Ex. C (Judgment and Commitment Order, 2020 CF2 6600).

1

In the ADW case, on May 13, 2020, in the presence of a Metropolitan Transit Police Department (MTPD) officer on a Greenline Metro train, Defendant Jackson brandished a pocketknife and pointed it at the victim's abdomen while verbally threatening him verbally. *See* Ex. D (Factual Proffer for 2020 CF3 4667 and 2020 CF2 6660). The officer drew his service weapon and commanded the defendant to drop the knife. Rather than submit, the defendant instead put it in his pocket and fled through the train car's emergency exit door, though he was caught in the last car at the next station by responding officers. *Id.* Several months later, on August 23, 2020, in the CPWL matter, the defendant was one of several people in a car MPD officers saw bail out of a car that had just fled the scene of a shooting. *Id*. During the chase, an officer saw the defendant toss a firearm from his waistband before being apprehended. *Id.*

As part of a plea agreement, the defendant was sentenced concurrently in both cases to 14 months of incarceration, suspended as to all but time served, and the docket in 2020 CF3 4667 reflects that he served approximately six months, as he was detained since his CPWL arrest (08/23/2020) and released from custody on the day of sentencing (02/26/2021). *See* Exs. B and C. The defendant was also sentenced to three years of supervised release (suspended) and one year of probation, which expired less than a month before his arrest in the present matter. *See Id*.

More recently, on February 15, 2022, while still on probation for the above offenses, Defendant Jackson pleaded guilty to misdemeanor Theft–2nd degree and Destruction of Property in D.C. Superior Court. *See* Ex. E (Judgment and Commitment Order, 2021 CMD 7191). The court imposed a concurrent suspended sentence for both counts, with one year of supervised probation that does not expire until February 15, 2023. *Id.* Not even two weeks later, the defendant was charged in 2022 CMD 1182 with Tampering with a Monitoring Device (GPS) imposed as a condition of supervised probation in the Theft/Destruction of Property case. *See* Ex. F.

2

Defendant now finds himself charged by federal Indictment for the possession of a loaded firearm, while on supervised probation in one case and awaiting trial in a second case for allegedly violating his release conditions in the other. He is charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1).

The defendant's cluster of prior convictions and pending charges involving violence, firearms, persistent efforts to evade police and frequent violations of release conditions, coupled with his decision to unlawfully obtain and carry a firearm, show an inability to comply with any release conditions that the Court might impose. Despite being afforded the opportunity of community supervision in his Superior Court cases, he instead armed himself with an AK 47-style semiautomatic rifle[1] loaded with 30 rounds of 7.62 x 39 mm ammunition. He was apprehended after attempting to elude police while driving a stolen vehicle, resisting arrest, then fleeing on foot through an apartment complex. For the reasons below, the government submits the defendant should be held without bond pending trial to ensure the safety of the community and his appearance at future court hearings.

**Procedural History and Applicable Authority**

On March 31, 2022, a federal grand jury returned an Indictment charging Defendant Jackson with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1), for the unlawful possession of an AK 47-style semi-automatic rifle

---

[1] According to the manufacturer, the Century Arms VSKA is a semi-automatic "AK 47 Style Rifle." *See* https://www.centuryarms.com/vska-wood-7-62-x-39.html [accessed Mar. 29, 2022].

and ammunition on March 21, 2022.[2]

At the initial appearance on April 1, 2022, the government will orally move for detention pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (involving firearm or other dangerous weapon) and 3142(d)(1)(A)(iii) (on probation or parole) of the federal bail statute.

The government contends that the defendant is a danger to the community. It is the government's burden to establish this by clear and convincing evidence. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). In an indicted case at a detention hearing, the government may proffer evidence. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In light of the facts and circumstances in this case and the defendant's history and characteristics, the government asks that the Court conclude that there is no condition or combination of conditions that would assure the safety of the community or the defendant's appearance at future proceedings. Therefore, Defendant Jackson should be detained. *See* 18 U.S.C. § 3142(e)(1).

## Nature and Circumstances of the Offenses Charged

On March 21, 2022, at approximately 9:15pm, members of the Metropolitan Police Department's ("MPD") Sixth District Crime Suppression Team were on patrol near 49th Street

---

[2] The case was originally papered in D.C. Superior Court (Case No. 2022 CF2 1631), and the defendant was held at presentment on March 22, 2022. However, as he has now been indicted in District Court, the government will move to dismiss that case after the defendant's initial appearance in District Court.

and Central Avenue NE, Washington D.C., along with officers from Sixth District Patrol. Officers Max Laielli, Carter Moore, and Sergeant James Keenan were working the evening tour of duty, in full uniform, riding in a marked scout car.   While on patrol, the officers were notified by the License Plate Reader ("LPR") program on their in-car computer that a stolen vehicle had just passed by the camera located on the 2800 Block of Benning Road NE, which faces eastbound. The LPR program provided a picture of the stolen vehicle, which was a dark blue Lexus sedan with a Virginia license plate #UZR8696.

Based on his prior experience, Officer Laielli, who was driving the scout car, assessed that the stolen vehicle would likely cross over the Benning Road Bridge eastbound toward Minnesota Avenue NE, so he started driving westbound toward the bridge, turning from Central Avenue NE onto Benning Road NE near 44th Street NE. While continuing westbound, as the officers approached the intersection of Benning Road NE and 42nd Street NE, Officer Laielli saw a dark-colored sedan, without its headlights on, stopped at the red light facing them from the opposite direction.   When the light turned green, the officers drove past the sedan and observed that it was a dark blue Lexus, bearing Virginia license plate #UZR8696. Its only visible occupant was the driver, who was later identified as the defendant, Delonte Jackson.

The officers made a U-turn on Benning Road NE, saw the Lexus turn right onto Blaine Street NE and then quickly turn into the lower parking lot of the Fort Chaplin Apartments complex. The officers followed behind it in their scout car. The driver of the Lexus appeared to attempt to park, but when Officer Moore and Sgt. Keenan got out of the scout car and gave repeated verbal commands to get out of the car, the Lexus started pulling away. As they pursued the suspect on foot, they saw the Lexus drive over a curb, across a pedestrian walkway, and up a grass embankment, stopping only when it reached a tall metal fence, that blocked its path.

5

Officer Moore saw Defendant Jackson get out of the Lexus and start to run away. *See* Ex. A-1 (below). Officer Moore, who was near the open driver's door of the Lexus, was able to grab him with one hand, but the defendant broke free after a brief struggle. Defendant Jackson hopped over a small fence and then fled along a pedestrian pathway. Officer Laielli radioed that the suspect (Jackson) had bailed out of the Lexus and requested additional patrol cars respond to the area. Officer Moore called out on the radio the suspect's description and that he had seen the firearm in the car, calling out "AK" as well as predetermined code word, which he observed as he encountered the defendant. *See* Ex. A-2.

Sergeant Keenan continued pursuing the defendant on the footpath. He lost sight of the defendant for a few seconds as Defendant Jackson rounded a corner along the path, but regained it as he (Keenan) did so himself.   After briefly losing sight of him a second time, Sgt. Keenan saw the defendant as he climbed over a fence adjacent to the pathway, then dash across a small field away from the rear of the Fort Chaplin Apartments complex and toward in the direction of 4351 Benning Road NE.   Officer Sterling, who was in a scout car near Benning Road pulled onto the field, apprehended and handcuffed the defendant with assistance from other responding officers. The defendant later verbally identified himself as "Delonte Jackson." His clothing also matched that worn by the person fleeing the Lexus seen on Officer Moore's body-worn camera (BWC).

While Sgt. Keenan was chasing the defendant down the footpath, Officer Moore stayed with the Lexus. Officer Laielli and other officers later searched it and located the firearm where Officer Moore seen it. *See* Ex. A-3 (below). In addition, they also recovered a PMC 9mm Luger shell casing from rear passenger-side floorboard. *See* Ex A-4 (below).

The officers' follow-up investigation revealed the firearm was a Century Arms VSKA 7.62 x 39 Pistol, serial # SV7P002777. A search of the weapon itself revealed it had one round of

6

Winchester 7.62mm x 39mm ammunition in the chamber, with a magazine that contained twenty-nine (29) rounds and had a capacity to hold thirty (30) rounds. Law enforcement records queries revealed that the firearm has not been reported stolen. The firearm, magazine, and ammunition will be submitted to the FBI Laboratory for further analysis, including for potential DNA. It should be noted, however, that no other passengers were seen in the Lexus at the time Jackson was seen driving it on Benning Road, nor when he fled from it; the firearm was in a location immediately accessible to Jackson (wedged between the driver's seat and center console); the Lexus itself was reported stolen; and the key or key fob needed to start it was not found on him or inside the car.

Moreover, the VSKA "AK 47 Style Rifle" is not designed to fire a 9mm round similar to the PMC 9mm Luger shell casing found on the rear floor of the Lexus. Because the car was stolen and Jackson was not lawfully permitted to carry a firearm, it is likely that a second firearm was in the vehicle at some point *after* it was stolen, and thus in the possession of Jackson or an unknown third party other than the Lexus' lawful owner.

As set forth above, the first factor, the nature and circumstances of the offense charged, clearly weighs in favor of detention. Here, the defendant was illegally in possession of an AK 47 style semi-automatic rifle with a near-fully loaded high-capacity 30-round magazine, while driving a stolen car, in a residential neighborhood. The nature of this offense weighs in favor of detention.

## Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is strong. As set forth above, the officers saw the defendant driving a vehicle they knew had been reported stolen, and after they followed him, he attempted to escape by driving over a grass embankment, then trying to run away on foot.   In both instances, he stopped only when compelled to—by the metal fence blocking the stolen Lexus'

path, and by the officer who tackled him.   Body-worn camera footage captures the totality of the officers' encounters with the defendant—the radio traffic during the vehicle pursuit, his driving on the grass embankment, bailing out of the car, struggling with Officer Moore, the foot pursuit, his attempts to hide and flee across the field, and finally being tackled to the ground and arrested. Notably, still photographs of Officer Moore's BWC, though somewhat obscured, show the firearm in place moments after the defendant flees from the car. *See* Ex. A-1 and A-2. There is no potential Fourth Amendment challenge or other issue the defendant may argue that would weaken the evidence against him.   Finally, the firearm's magazine was loaded with 29 rounds of ammunition, with an additional round in the chamber.

### Defendant Jackson's History and Characteristics

The third factor, the history and characteristics of the person, similarly weighs in favor of detention.   The defendant has not only several prior convictions, including one for unlawfully carrying a firearm without a license and another involving the threat of violence, he was probation for two misdemeanor convictions, is awaiting trial for violating conditions of release in another matter. He had also just completed supervised probation for two prior felony convictions.

The nature of his prior convictions and pending cases, combined with their close proximity to each other and the instant offense, reflect an obvious and repeated disregard for the courts' orders concerning his conditions of release. They demonstrate that Defendant Jackson cannot not comply with any conditions of release in the community. Therefore, this factor weighs in favor of detention pending trial in this case.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention. The charged offense involves

the defendant's possession of a highly dangerous weapon loaded with a high-capacity magazine, despite being legally barred from such possession as a convicted felon, and despite being on supervised probation and awaiting trial on another matter. The firearm that the defendant possessed had the potential to cause grievous bodily injury (or death) to members of the community, law enforcement, or to the defendant himself.  Indeed, given its greater effective range, higher capacity, higher-velocity and high-caliber round, both the weapon and its ammunition are designed to inflict maximum damage to human life. Moreover, the defendant was carrying it in stolen car. Once he realized officers intended to conduct a traffic stop, he swiftly took flight—initially by reckless driving the Lexus onto the grass, then leading officers on a foot chase. Officer Moore saw the weapon in the car as he struggled with the defendant, and he radioed to others on scene.   As they pursued the defendant, the officers were unaware of whether the defendant possessed another firearm on him. Defendant Jackson's actions thus created an incredibly dangerous situation for law enforcement, the defendant, and anyone else in the area.

Indeed, other courts have recognized the inherent dangerousness of carrying a concealed, loaded firearm on one's person. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public. *See United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where

other people are congregated, as alleged, poses an inherent risk of danger to the community.").

The defendant's possession of an AK 47-style firearm loaded with 30 rounds of ammunition while driving in stolen vehicle and attempting to elude police by car and on foot, while on probation and awaiting trial, show plainly he is a danger to the community. This factor, as with the three prior factors, weighs in favor of the defendant being held without bond pending trial.

**There are No Condition or Combination of Conditions that Would Ensure Defendant Jackson's Appearance or Compliance with Court-Ordered Release Conditions**

After serving approximately six months of incarceration for the unlawful possession of a firearm, as well as a conviction for Assault with a Deadly Weapon, Defendant Jackson was on supervised release for approximately one year. That period expired only one month before the instant offense.  Yet before it did so, he also committed two additional misdemeanor offenses. His probation for those offenses were pending at the time of the present offense, and he was also awaiting trial for allegedly violating the terms of his probation by tampering with a GPS monitoring device. His recent conduct—the possession of a semiautomatic assault rifle with a 30-round magazine—is especially concerning in light of his prior convictions and alleged offense. The fact that Defendant Jackson obtained an AK 47-style rifle, coupled with his efforts to flee the officers and elude arrest, further rebut any argument that he could be released in the community and be expected to comply with any release conditions. The defendant's inability to comply with the terms of his probation release supports the government's argument he would circumvent the Court's efforts to reasonably control his behavior through conditions of release and keep the community safe.

## **Conclusion**

The Court should grant the government's motion to detain Defendant Jackson pending trial because he has demonstrated that he is a danger to the community.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:      */s/ Michael Engallena*
Michael Engallena
NJ Bar No. 018782008
Special Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20535
Phone:   (240) 278-2129
Email:   michael.engallena@usdoj.gov

11

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused a copy of the foregoing to be served upon the Court and defense counsel of record electronically on April 1, 2022.


By:     */s/ Michael Engallena*
        Michael Engallena
        NJ Bar No. 018782008
        Special Assistant United States Attorney
        555 4th Street, N.W.
        Washington, DC 20535
        Phone:   (240) 278-2129
        Email:   michael.engallena@usdoj.gov

**EXHIBIT A**

**A-1**



**A-2**



13

**A-3**



**A-4**

